Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 5, 2017

**2017 CO 65**

**No. 17SA28, <u>People v. Shoen</u>—Fourth Amendment—Consensual Encounters.**

In this case, the supreme court considers whether the defendant's encounter with police, during which he confessed to possessing a controlled substance, was consensual or whether it constituted an impermissible seizure under the Fourth Amendment.  We conclude that under the totality of the circumstances the encounter was consensual.  Accordingly, we reverse the trial court's order suppressing evidence from the encounter, and we remand to that court for further proceedings consistent with this opinion.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 65

**Supreme Court Case No. 17SA28**
*Interlocutory Appeal from the District Court*
Montrose County District Court Case No. 15CR351
Honorable Mary E. Deganhart, Judge

**Plaintiff–Appellant:**

The People of the State of Colorado,

v.

**Defendant–Appellee:**

Bernard James Shoen.

**Order Reversed**
*en banc*
June 5, 2017

**Attorneys for Plaintiff–Appellant:**
Dan Hotsenpiller, District Attorney, Seventh Judicial District
Kurt Beckenhauer, Deputy District Attorney
  *Montrose, Colorado*

**Attorneys for Defendant–Appellee:**
Douglas K. Wilson, Public Defender
Zachary Martin, Deputy Public Defender
  *Montrose, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1     In this interlocutory appeal, the People ask us to consider whether the trial court erred in suppressing evidence.   Specifically, we must decide whether defendant Bernard James Shoen's encounter with police, during which he confessed to possessing a controlled substance, was consensual or whether it constituted an impermissible seizure under the Fourth Amendment.   We conclude that the encounter was consensual.   Accordingly, we reverse the trial court's order suppressing Shoen's statements and the evidence seized from his truck, and we remand to that court for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

¶2     Just after 1 a.m. on December 5, 2015, Sergeant Witte and Officer Trimble of the Montrose Police Department were on patrol near a self-storage center.  The officers saw an open storage unit with a pickup truck parked in front, and they stopped to investigate because there had recently been break-ins in the area.  The officers parked their patrol car a few units down from the open unit, shined a light on the truck, and walked toward the open unit on foot.

¶3     Sergeant Witte then saw Shoen in the open storage unit, and asked whether he and Officer Trimble could speak with him.  Sergeant Witte informed Shoen that they were the police and that he was not in trouble, but they had decided to stop and talk after seeing the open storage unit because of the recent break-ins.  Shoen agreed to talk to the officers and said that the storage unit was his.  The officers noticed that the license plates on Shoen's tuck were expired and ran Shoen's plates and driver's license.  They talked with Shoen while they waited, and the tone of the officers' voices was

2

casual.  The officers told Shoen that the license plates on his truck were expired, his driver's license was revoked, and his truck was not insured.  They advised him that he should not drive and should call someone to pick him up.  Further, they told him that they would impound his truck if he were to drive it.

¶4     Sergeant Witte then asked Shoen whether anything in his truck was stolen and Shoen responded, "No, not as far as I know."  Sergeant Witte asked Shoen whether he would mind pulling the tarp back that was covering his truck bed but clarified that "you don't have to."  Shoen immediately responded that he wouldn't mind, stood up, and pulled the tarp off the bed of his truck.  After briefly examining the contents of the truck bed, Sergeant Witte asked Shoen whether there were any drugs in the truck, and Shoen responded that he had found a "rig" in the truck "the other day."  Sergeant Witte then asked Shoen to stop wasting their time, do the right thing, and tell them what type of drug was in the truck.  The Sergeant asked if it was "dope" or methamphetamine and asked how much methamphetamine was in the truck.  Shoen then told the officers that there was a "little bit" of methamphetamine in his truck.  In response, the officers began searching the cab of Shoen's truck.[1]  Sergeant Witte asked where the methamphetamine was, and Shoen directed the officers' search of the cab to a box containing methamphetamine.  The officers found the methamphetamine approximately twenty-

_____

[1] The People do not contend that the officers had probable cause or reasonable suspicion before Shoen's admission.  Shoen does not dispute that once he admitted to possessing methamphetamine the officers had probable cause to conduct an investigatory search of his truck.

five minutes after first approaching Shoen. They never touched Shoen nor directed his movements in any way.

¶5 The People charged Shoen with possession of a controlled substance. In response, Shoen sought to suppress both his admission and the evidence that the officers discovered during their search of his truck. He argued that both were obtained "from an illegal investigatory stop" in violation of his Fourth Amendment rights. The People responded that the evidence was admissible because the officers' encounter with Shoen was consensual, Shoen's statements were voluntary, and their search was supported by probable cause arising from Shoen's admission that he had drugs in the truck.

¶6 The trial court granted Shoen's motion, concluding that although the initial encounter was consensual, Sergeant Witte's continued questioning after he advised Shoen not to drive became increasingly coercive and converted the consensual encounter into an impermissible seizure. The court reasoned that the circumstances surrounding Shoen's confession indicated that a reasonable person would have believed that he was not free to leave if he did not respond to the officers' questions, and thus, the encounter was no longer voluntary after the officers advised Shoen not to drive. Therefore, the court concluded that all evidence obtained after the officers continued to question Shoen after advising him not to drive was fruit of the poisonous

4

tree and had to be suppressed. Hence, the trial court suppressed both Shoen's statements about possessing the drugs and the drugs themselves.[2]

¶7 We now consider the People's interlocutory appeal challenging the trial court's suppression order.

## II. Standard of Review and Applicable Law

¶8 Our review of a trial court's ruling on a motion to suppress presents a mixed question of fact and law. People v. Gothard, 185 P.3d 180, 183 (Colo. 2008). We defer to the trial court's factual findings if those findings are supported by competent evidence in the record; however, we review the trial court's legal conclusions de novo. Id.

¶9 The Fourth Amendment to the United States Constitution protects persons against unreasonable searches and seizures. U.S. Const. amends. IV, XIV. The Fourth Amendment does not prohibit all contact between police and citizens but is instead designed "to prevent arbitrary and oppressive interference . . . with the privacy and personal security of individuals." I.N.S. v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Martinez–Fuerte, 428 U.S. 543, 554 (1976)). "Only when [an] officer, by means of physical force or show of authority, has restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). A seizure implicates constitutional protections and, therefore, must be justified by either probable cause (if the seizure is an arrest) or reasonable articulable

---

[2] Pursuant to C.A.R. 4.1, the People certified that this appeal was not taken for the purposes of delay and that the suppressed statements and evidence are material to proving the charges against Shoen.

suspicion of criminal activity (if the seizure is an investigatory stop). People v. Paynter, 955 P.2d 68, 72 (Colo. 1998).

¶10 But when police use non-coercive tactics to elicit the cooperation of a citizen, the encounter is consensual so long as a reasonable person in that citizen's position would feel free to leave. See id. at 73. Consensual encounters between police and citizens do not implicate Fourth Amendment protections because if a reasonable person would feel free to leave, there has been no intrusion on liberty or privacy. See United States v. Mendenhall, 446 U.S. 544, 554 (1980); People v. Marujo, 192 P.3d 1003, 1006–07 (Colo. 2008); People v. Thomas, 839 P.2d 1174, 1177–78 (Colo. 1992). However, a consensual encounter can be transformed into a seizure within the meaning of the Fourth Amendment if, in view of all the surrounding circumstances, a reasonable person would have believed that he was not free to leave or decline the officer's requests. Delgado, 466 U.S. at 215; Marujo, 192 P.3d at 1007.

¶11 "[A] court must consider the totality of the circumstances to determine whether the police exercised force or authority to effect a stop, or whether the police merely sought the voluntary cooperation of a citizen through a consensual encounter." Paynter, 955 P.2d at 73. As the Supreme Court explained in Mendenhall, circumstances such as "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" can indicate a seizure as opposed to a consensual encounter. 446 U.S. at 554. If there are no circumstances indicating that a reasonable person would be so intimidated by

6

the police contact that he would not feel free to leave, then otherwise inoffensive contact between a person and the police cannot, as a matter of law, amount to a seizure. Id. at 555.

## III. Application

¶12 The trial court concluded that Shoen was impermissibly seized for Fourth Amendment purposes once the officers continued to question him after advising him not to drive. We disagree. We conclude that that the officers' encounter with Shoen was consensual up to and including the moment Shoen admitted to having methamphetamine in his truck.

¶13 Before the officers contacted Shoen, they parked their patrol car several storage units behind Shoen's truck. They did not use the police car's emergency lights or siren, and they left the exit paths in the storage complex open. They explained why they were there and used a conversational tone throughout the encounter. Neither of the officers touched Shoen nor directed him where to stand or sit. The officers did not display any weapons or threaten Shoen at any point in their conversation. They asked Shoen whether they could speak with him and notified him at the beginning of their conversation that he was not in any trouble; Shoen agreed to talk to them. Although Sergeant Witte advised Shoen not to drive because he had a revoked license and his truck's registration was expired, the officers never instructed Shoen to remain in the area or restrained him. In fact, they told him that he should call someone to come and pick him up so he could leave. They asked Shoen's permission to search the bed of his truck and told him that he did not have to let them look. Once Shoen admitted that

7

there had been a "rig" in his truck—which the officers understood to mean drug paraphernalia used to consume drugs—Sergeant Witte asked Shoen to stop wasting their time and tell them what type of drug was in the truck. When Sergeant Witte asked how much methamphetamine was in the truck, Shoen responded "a little bit" without additional questioning from the officers.

¶14 Moreover, the officers did not attempt to intimidate Shoen into remaining at the storage unit. In fact, their advice was just the opposite: They recommended that he call someone to pick him up so he could leave. Shoen agreed to speak with the officers and appeared comfortable throughout the encounter; he willingly answered the officers' questions and allowed them to look in his truck bed. See Paynter, 955 P.2d at 73 (deeming an encounter consensual because the defendant's liberty was not restrained and his voluntary cooperation was elicited through non-coercive questioning); Thomas, 839 P.2d at 1178 (holding that an encounter was consensual where the defendant was comfortable during the encounter, chose not to leave, and acquiesced to the officer's request to answer questions); Marujo, 192 P.3d at 1006 (noting that a request for consent to search does not transform a consensual encounter into a seizure so long as the officer does not convey a message that compliance is required). Therefore, under the totality of the circumstances, a reasonable person in Shoen's position would have known that he was free to leave or decline the officers' requests. See Thomas, 839 P.2d at 1177–78 ("The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or to disregard the official's request for information."). Simply put, Shoen chose to stay and

8

talk with the police officers.  Thus, we conclude that the officers' encounter with Shoen was consensual.

## IV.  Conclusion

¶15     Accordingly, we reverse the trial court's order suppressing Shoen's statements and the evidence seized from the truck, and we remand to that court for further proceedings consistent with this opinion.