Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2021 CO 15**

**No. 20SA338, *People v. Thompson* — Criminal Law — Searches and Seizures — Evidence.**

In this interlocutory appeal under section 16-12-102(2), C.R.S. (2020), and C.A.R. 4.1, the People challenge the trial court's order suppressing on Fourth Amendment grounds evidence seized from the defendant's cell phone. The People contend that the independent source doctrine applies and that therefore suppression was unwarranted.

The supreme court now concludes that the People did not present sufficient evidence to establish the applicability of the independent source doctrine. Accordingly, the court affirms the trial court's suppression order.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2021 CO 15

---

**Supreme Court Case No. 20SA338**
*Interlocutory Appeal from the District Court*
Jefferson County District Court Case No. 19CR3848
Honorable Laura Tighe, Judge

---

**Plaintiff-Appellant:**

The People of the State of Colorado,

v.

**Defendant-Appellee:**

Asha Adolphus Thompson.

---

**Order Affirmed**
*en banc*
February 22, 2021

---

**Attorneys for Appellant:**
Alexis King, District Attorney, First Judicial District
Colleen R. Lamb, Appellate Deputy District Attorney
*Golden, Colorado*

**Attorneys for Appellee:**
The Noble Law Firm, LLC
Antony Noble
*Lakewood, Colorado*

Law Offices of Rachel A. Oliver, L.L.C.
Rachel Oliver
*Arvada, Colorado*

Gummerson Law Office
Holly Gummerson
        *Arvada, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**CHIEF JUSTICE BOATRIGHT** dissents.
**JUSTICE MÁRQUEZ** dissents.

2

¶1     In this interlocutory appeal under section 16-12-102(2), C.R.S. (2020), and C.A.R. 4.1, the People challenge the trial court's order suppressing on Fourth Amendment grounds evidence seized from the cell phone of the defendant, Asha Thompson. The People contend that the independent source doctrine applies and that therefore suppression was unwarranted. Because we conclude that the People did not present sufficient evidence to establish the applicability of the independent source doctrine, however, we affirm the trial court's suppression order.

## I. Facts and Procedural History

¶2     Lakewood police were dispatched to the Blue Sky Motel in response to a shooting. Upon their arrival, they found the victim, B.T., unresponsive in a motel room with a gunshot wound to her head. She was transported to the hospital but died a short time later.

¶3     A witness to the shooting subsequently identified Thompson, who was known to Lakewood police, as the shooter, and the county court issued a warrant for Thompson's arrest.

¶4     At some point thereafter, Lakewood police received an anonymous tip that Thompson was staying at a specified room in a different motel. They found and arrested Thompson there and then obtained a search warrant to allow them to search the room in which Thompson was arrested. As pertinent here, this warrant authorized the police to seize, among other things, cell phones and other electronic

devices and provided that any seized cell phones "may be downloaded and examined either manually or forensically." Based on this warrant, the police ultimately seized Thompson's cell phone and sent it to a forensic laboratory where technicians subsequently unlocked it and downloaded all of the data on it.

¶5 After the police had sent Thompson's phone to the forensic laboratory (but before the contents had been downloaded), this court decided *People v. Coke*, 2020 CO 28, 461 P.3d 508. In *Coke*, we concluded that a warrant broadly authorizing police to search a cell phone for all texts, videos, pictures, contact lists, phone records, and any data showing ownership or possession violated the particularity demanded by the Fourth Amendment and was therefore defective. *Id.* at ¶ 38, 461 P.3d at 516.

¶6 Nearly two months after this court's decision in *Coke* (and nearly eight months after the issuance of the initial search warrant), the forensic laboratory completed the phone data download, and the People produced the downloaded materials to Thompson a month later.

¶7 Thompson then moved to suppress all of the information downloaded from his cell phone based on the Fourth Amendment and this court's decision in *Coke*. Specifically, he contended that the search warrant that the police had obtained lacked the requisite particularity for cell phone searches.

4

¶8    Shortly thereafter, the police sought and obtained a second warrant, allegedly supported by the requisite particularity, to search the same cell phone that the police had already unlocked and fully searched, notwithstanding the facts that the People (1) had already downloaded and produced in discovery all of the contents of that phone and (2) appear to have retained in their possession the very information that they were purportedly seeking again.

¶9    The People then filed a response to Thompson's motion, and the trial court conducted a hearing on that motion. At this hearing, the People conceded that the first warrant that they had obtained failed to meet the Fourth Amendment's particularity requirement. Nonetheless, the People argued that suppression was unwarranted because (1) the good faith exception to the exclusionary rule applied because the police had relied in good faith on a warrant signed by a neutral magistrate and (2) in the alternative, the independent source doctrine applied because the second warrant was sufficiently particular and did not include any information from the prior search (the People made this independent source doctrine argument for the first time at the hearing, not having mentioned the doctrine in their written response to Thompson's motion).

¶10    The trial court rejected each of the People's contentions. The court began by observing that the first warrant was "very general, very broad" and did not "even come close to the particularity that, in fairness, should have been described." The

5

court proceeded to conclude that the good faith exception did not apply because preexisting case law from this court put the People on notice as to the level of particularity required to obtain a warrant to search a cell phone. Finally, the court declined to apply the independent source doctrine because, in the court's view, the People did not carry their burden of demonstrating that the subsequent warrant was independent of the first, unlawful one. To the contrary, the court observed, "I'm not aware of the delineation between what was downloaded in the first download and that which was sought in the second download, after what the People argue is a more *Coke*-compliant warrant." The court further opined that issuing a second, more comprehensive warrant after the People had found what they considered to be helpful information based on the first, defective warrant would not cure the constitutional deficiency. Accordingly, the court granted Thompson's motion to suppress.

¶11 The People now bring this interlocutory appeal, contending that the trial court misapplied the independent source doctrine and failed to make appropriate findings to support its ruling.

## II. Analysis

¶12 We begin by addressing our jurisdiction and the applicable standard of review. We then set forth the pertinent Fourth Amendment principles and apply those principles to the facts presented.

## A. Jurisdiction and Standard of Review

¶13 Section 16-12-102(2) and C.A.R. 4.1 provide that the prosecution may file an interlocutory appeal in this court from a trial court's ruling granting a defendant's pretrial motion to suppress evidence if the prosecution certifies both to the judge who granted the motion and to this court that the appeal is not taken for purposes of delay and the evidence at issue is a substantial part of the proof of the charge pending against the defendant.

¶14 Here, we acknowledge Thompson's contention that the certification submitted by the People was inadequate. We must also acknowledge, however, that our prior case law reflects some inconsistency in our approach to jurisdiction in interlocutory appeals like this one. At times, we have said that we "will refuse to entertain an interlocutory appeal under C.A.R. 4.1 where the prosecution's certification is in the form, and contains the words, required by C.A.R. 4.1(a), but the prosecution's brief and the record do not support this certification." *People v. Matheny*, 46 P.3d 453, 458 (Colo. 2002). In other—and perhaps most—cases, however, we have simply accepted jurisdiction based solely on a facially compliant certification without evaluating whether the record or appellate briefs, in fact, support that certification. *See, e.g.*, *People v. Threlkel*, 2019 CO 18, ¶ 12 n.2, 438 P.3d 722, 726 n.2 (noting that an interlocutory appeal was properly filed because the People had complied with the requirement that they "certify that the

7

appeal is not taken for purposes of delay and that the evidence is a substantial part of the proof of the charge pending against the defendant"). Although this is a conflict that we intend to resolve in an appropriate case, we believe that it would be unfair and inappropriate to do so without notice to the parties. Accordingly, we conclude that we have jurisdiction here, and we therefore decline to dismiss this appeal.

¶15 A trial court's suppression order presents a mixed question of fact and law. *Coke*, ¶ 10, 461 P.3d at 512. Accordingly, "[w]e accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo." *Id.* (quoting *People v. Davis*, 2019 CO 24, ¶ 14, 438 P.3d 266, 268); *see also People v. Glick*, 250 P.3d 578, 582 (Colo. 2011) ("We will not substitute our own judgment for that of the trial court unless the trial court's findings are clearly erroneous or not supported by the record.").

¶16 In reviewing a trial court's ruling on a motion to suppress, we look solely to the record created at the suppression hearing. *Moody v. People*, 159 P.3d 611, 614 (Colo. 2007).

### B. Applicable Fourth Amendment Principles

¶17 The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." That Amendment

further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* These provisions serve to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967)).

¶18 A search conducted pursuant to a warrant is typically deemed reasonable. *Coke*, ¶ 34, 461 P.3d at 516. In light of the Fourth Amendment's particularity requirement, however, so-called "general warrants," which permit general, exploratory searches through a person's belongings, are prohibited. *Andresen v. Maryland*, 427 U.S. 463, 480 (1976); *Coke*, ¶ 34, 461 P.3d at 516.

¶19 These principles apply with particular force in the case of cell phone searches. As we have previously observed, cell phones have "immense storage capacities" and can "collect and store many distinct types of data in one place." *Coke*, ¶ 37, 461 P.3d at 516. We have further noted that because cell phones "hold for many Americans 'the privacies of life,'" they are entitled to special protections from searches. *Id.* (quoting *Davis*, ¶ 19, 438 P.3d at 269). Accordingly, we have said that a warrant broadly authorizing police to search a cell phone for all texts, videos, pictures, contact lists, phone records, and any data showing ownership or

9

possession violates the particularity demanded by the Fourth Amendment. *Id.* at ¶ 38, 461 P.3d at 516.

¶20 In general, materials seized in violation of the Fourth Amendment are excluded from evidence. *People v. Morley*, 4 P.3d 1078, 1080 (Colo. 2000). This exclusionary rule is a judicially created remedy that is primarily designed to deter unlawful searches and seizures by law enforcement officials. *Id.* Because the ultimate touchstone of the Fourth Amendment is reasonableness, however, that Amendment's requirements are subject to certain exceptions. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

¶21 One such exception is the independent source doctrine. Under this doctrine, "unconstitutionally obtained evidence may be admitted if the prosecution can establish that it was also discovered by means independent of the illegality." *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988). As the Supreme Court put it, "So long as a later, lawful seizure is genuinely independent of an earlier, tainted one (which may well be difficult to establish where the seized goods are kept in the police's possession) there is no reason why the independent source doctrine should not apply." *Murray v. United States*, 487 U.S. 533, 542 (1988). Accordingly,

> The ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during

that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Id.* (footnote omitted); *accord Schoondermark*, 759 P.2d at 719.

¶22 When, as here, the People assert the applicability of the independent source doctrine, they bear the burden of proving by a preponderance of the evidence the doctrine's applicability. *See Schoondermark*, 759 P.2d at 719.

## C. Application

¶23 Here, the People conceded below, the trial court found, and we agree that the initial warrant in this case did not identify with the particularity required by the Fourth Amendment the items within the cell phone to be searched. Accordingly, the search violated Thompson's Fourth Amendment rights.

¶24 The question thus becomes whether the People have carried their burden of establishing the applicability of the independent source doctrine. We conclude that they have not.

¶25 As noted above, the People did not mention the independent source doctrine in their written opposition to Thompson's motion to suppress. They simply said that, in light of this court's decision in *Coke*, law enforcement sought to "refresh the prior warrant" and obtained a new warrant. Thereafter, at the suppression hearing, the People mentioned the doctrine for the first time, but they did not provide the court with any legal authority supporting their position, nor did they present (or even proffer) any evidence to attempt to establish the

11

requirements of that doctrine, although nothing prevented them from doing so. Instead, the People stated, in a conclusory way, that after evidence obtained from a defective warrant is suppressed, law enforcement can obtain "additional warrants or second warrants, as long as it doesn't include any information from the prior search." In our view, this minimal argument of counsel did not satisfy the People's burden of establishing the applicability of the independent source doctrine.

¶26 In light of our foregoing determination, we are not persuaded by the People's argument that the trial court did not apply the correct legal standard regarding the independent source doctrine and did not make the findings necessary to reject the applicability of that doctrine. As noted above, the People never provided to the trial court any authority reciting what they now contend is the correct legal standard. In any event, it is not at all clear to us how the trial court purportedly misapplied the law. Although the People appear to take issue with the court's statement that it was unaware of any distinction between the first and second warrants, it was merely responding to the People's assertion that the independent source doctrine allows them to obtain further warrants as long as such warrants do not include any information from a prior, unlawful search. And in noting that the People cannot cure a defective warrant merely by obtaining a new warrant after the People had found what they considered to be helpful

information, the court appears to have been indicating, albeit perhaps implicitly, that it was not persuaded that the proffered second search was independent of the initial, unlawful one.

¶27 Nor are we persuaded by the People's apparent contention that after obtaining evidence based on a defective warrant, they may cure the defect simply by procuring a new warrant and "obtaining" the evidence a second time (notwithstanding the fact that they had the evidence in their possession the entire time), without showing that the later seizure was genuinely independent of the earlier, tainted one. Such an argument ignores the independent source doctrine's requirement of a subsequent search independent of an earlier, unlawful one, and were we to adopt the People's position, we would render meaningless the exclusionary rule in a case like this one because the People could always just seek a second warrant. The independent source doctrine does not extend that far. Nor do the cases on which the People rely support their position.

¶28 For example, in *United States v. Hanhardt*, 155 F. Supp. 2d 840, 848–49 (N.D. Ill. 2001), the court concluded that the independent source doctrine applied when the evidence showed that the Government's decision to seek a warrant was not prompted by anything discovered during a prior, warrantless search in a different case. As noted above, the People presented no such evidence here.

¶29 Similarly, in *State v. Smith*, 54 A.3d 772, 789–90 (N.J. 2012), the court concluded that the independent source doctrine applied because the manner in which the police's investigation unfolded and the integral nature of the materials at issue supported a finding that the police would have obtained those materials through sources independent of a prior defective warrant. Again, the People created no such record here. Specifically, nothing in the record before us indicates that the second warrant was sought or obtained independently of the prior, defective warrant. And the People have not indicated what the records at issue contain or why they are in any way relevant in this case, much less that they are integral to the People's case here.

¶30 Finally, in *Commonwealth v. Henderson*, 47 A.3d 797, 804–05 (Pa. 2012), the court concluded that the independent source doctrine applied when a detective obtained a defective warrant but then a second detective in the same office conducted a new investigation and sought a second warrant. Although the court could not say that the second investigation was completely independent of the first, the court deemed it appropriate to limit the independence requirement in a case like that before it to circumstances in which the police were seeking to exploit their own willful misconduct. *Id.* Here, it is not clear that Colorado law regarding the independent source doctrine is coterminous with Pennsylvania law on that

14

subject. In any event, nothing in the record before us suggests the type of new and separate investigation that was before the court in *Henderson*.

¶31 For all of these reasons, we conclude, on the record before us, that the People have not carried their burden of establishing the applicability of the independent source doctrine in this case.

## III. Conclusion

¶32 Because it is undisputed that the warrant on which the police relied in downloading the contents of Thompson's cell phone did not comply with the Fourth Amendment's warrant particularity requirement, and because the People did not carry their burden of establishing the applicability of the independent source doctrine here, we conclude that the trial court properly granted Thompson's motion to suppress.

¶33 Accordingly, we affirm the trial court's suppression order.

**CHIEF JUSTICE BOATRIGHT** dissents.
**JUSTICE MÁRQUEZ** dissents.

15

CHIEF JUSTICE BOATRIGHT, dissenting.

¶34    Today, the majority draws its conclusion that the prosecution did not prove the applicability of the independent source exception from a hearing with what I would characterize as a confusing record.  The record does make clear to me, however, that the trial court failed to apply the correct standard for the independent source exception and then, based on that incorrect standard, denied the prosecution an opportunity to present evidence and develop a record on the issue.  Thus, in my view, the majority errs by failing to remand this case with directions to allow the prosecution to present its evidence regarding the independent source exception.

¶35    More troublesome to me, however, is what I will call the "warning" issued by the majority, maj. op. ¶ 14, and given life by Justice Márquez's dissent, that this court should decide whether suppressed evidence is substantial to the prosecution's case even though the prosecution certifies this to be true when it files an interlocutory appeal.  From my perspective, that position finds no support in the plain language of the statute governing interlocutory appeals, undermines the statute's purpose, and presents troubling practical implications.  Indeed, no federal court faced with the same issue has opted to override the prosecution's certification that suppressed evidence is substantial such that an interlocutory appeal is warranted.  And it is similarly not our place to pass judgment on a

1

certification simply because we believe—based on our 30,000-foot view of the case—that the suppressed evidence is insubstantial. For these reasons, I respectfully, but nonetheless strongly, dissent.

## I. The Prosecution Is Entitled to Present Evidence on the Independent Source Exception

¶36 The majority's conclusion that the prosecution did not present sufficient evidence on the independent source exception at the hearing is true, but that is because the trial court precluded the prosecution from presenting such evidence in the first place. The trial court misunderstood the standard for the independent source exception and then, on that basis, refused to entertain the prosecution's argument that it could satisfy the exception under the correct standard. Now, the majority further exacerbates this error by implying that the trial court's inaccurate recitation of the independent source exception was error-free and, furthermore, that the prosecution was dilatory and therefore already had its day in court. *See* maj. op. ¶ 25. Because the prosecution is entitled to at least present evidence and argue that the second warrant was independent of the first warrant, I would remand for an evidentiary hearing applying the correct standard.

¶37 The exclusionary rule seeks to deter unlawful police conduct by prohibiting the use of evidence obtained in violation of the Fourth Amendment. However, exceptions to the rule assure that, in certain circumstances, juries receive evidence derivative of illegally obtained evidence in the interest of preserving the truth-

2

seeking process. *People v. Schoondermark*, 759 P.2d 715, 718 (Colo. 1988). Those exceptions are meant to put "the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred." *Nix v. Williams*, 467 U.S. 431, 443 (1984) (emphasis added). Excluding evidence that is obtained *independent* of police error or misconduct places the government in a worse position. *Id.* Although the majority acknowledges these policy considerations that inform the proper standard for the independent source exception, maj. op. ¶¶ 17, 21, its recitation of that standard, alongside its seeming endorsement of the trial court's improper standard, is, at the very least, puzzling.

¶38 To be clear, while discussing the second warrant at the hearing, the trial court insisted that the information obtained from the second warrant must be different from what was obtained in the first. In fact, the judge stated, "[T]hose are my terms." Then, the trial court repeatedly applied that incorrect standard, requiring the prosecution to show that the information gleaned from the second warrant was "different" from the information gleaned from the first warrant:

> I have to be convinced . . . that the information . . . gleaned through the second warrant is *different* than that which you gleaned through the first warrant, and you are going to have to show the Court that before I'm persuaded that I will consider admitting something off of Mr. Thompson's phone.

3

(Emphasis added.) But no such requirement exists.[1] The independent source exception requires the prosecution to show only that (1) the decision to seek a warrant was not prompted by what was observed during the initial unlawful search, and (2) the magistrate who issued the later warrant did not rely upon information obtained during that unlawful search. *Schoondermark*, 759 P.2d at 719 (citing *Murray v. United States*, 487 U.S. 533, 542 (1988)). By acknowledging this standard on the one hand, maj. op. ¶ 21, and then noting that "it is not at all clear . . . how the trial court purportedly misapplied the law" on the other, *id.* at ¶ 26, I fear that the majority muddies the waters of the independent source exception for future cases.

¶39 Furthermore, the majority seems to suggest that the prosecution somehow forfeited its opportunity to argue the applicability of the independent source exception because it did not mention the exception in its written opposition to Thompson's motion to suppress *the first warrant*. *Id.* at ¶ 26. It is true that the

---

[1] In fact, we have recognized that the independent source exception applies "to evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Schoondermark*, 759 P.2d at 719 (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)). This rule plainly encompasses the *same* evidence initially gleaned from an unlawful search that is later obtained independent of the illegality. The inquiry isn't whether there is a difference in the evidence, but rather whether the means of discovering the evidence were independent.

prosecution raised the independent source exception for the first time at the hearing in question; but it is equally true that this hearing occurred *before* Thompson even filed a motion to suppress the second warrant. Accordingly, at the hearing, the People offered to provide authority for the exception's applicability but noted that the discussion of the independent source exception issue was premature because Thompson had not yet filed a motion to suppress the second warrant. This suggests that the People did not believe the second warrant was even before the court. The trial court, operating under the assumption that the second warrant was before the court, was still unwilling to hold a proper evidentiary hearing due to its fundamental misunderstanding of the independent source exception. In other words, there was a failure to communicate. But the confusion existing between the People and the trial court does not amount to forfeiture of the independent source exception argument.

¶40 Despite the confusing procedural posture, the majority unfortunately forges ahead and compounds the trial court's error by deciding that the prosecution failed to meet its burden of proving the applicability of the independent source exception. This conclusion, again, overlooks the fact that the prosecution was not provided an opportunity to develop a record on whether the second warrant was obtained *independent* of any evidence obtained from the first warrant. The minute order makes clear that the trial court would not consider any evidence unless the

5

People could "demonstrate that the info gleaned from the second warrant [was] different from the info gleaned from the first warrant." Applying this incorrect standard for the independent source exception, the judge refused to consider evidence and halted argument on the issue: "And right now, I don't know, I'm not going to speculate, and we're not going to spend any more time on this." As a result, the People *could not* present evidence to demonstrate that the second warrant was independent source of the first.

¶41 Nevertheless, the majority concludes that the People failed to present sufficient evidence, maj. op. ¶ 25, and that "nothing in the record before us indicates that the second warrant was sought or obtained independently of the prior, defective warrant," *id.* at ¶ 29. Both of these statements are of course true, but only because the trial court denied the prosecution any opportunity to present evidence.[2] Because the prosecution is entitled to at least present evidence, I would reverse the suppression order and remand the matter to the trial court with directions to hold an evidentiary hearing and to apply the correct standard.

---

[2] To this end, the majority correctly points out that the prosecution's argument was "minimal" and that the prosecution "did not provide the court with any legal authority supporting [its] position." Maj. op. ¶ 25. However, argument on this issue was cut short, and the trial court ignored the prosecution's offer of authority on the independent source exception.

¶42 While I believe failure to remand is an error here, the more global and potentially long-lasting error lies with the majority's strong indication that, in the future, it plans on venturing into the territory of determining whether suppressed evidence is substantial.

## II. This Court Has No Authority to Review the Substantiality of Evidence in Section 16-12-102(2) Certifications

¶43 I cannot in good conscience overlook the majority's warning that it plans to start weighing the substantiality of evidence in these interlocutory appeals—a proposition that flies in the face of the plain language of the statute and the role of this court.

¶44 We have no authority under the plain language of section 16-12-102(2), C.R.S. (2020), or Colorado Rule of Appellate Procedure 4.1 to review the materiality of evidence.[3] Section 16-12-102(2) allows the prosecution to file an interlocutory appeal from a ruling suppressing evidence "*if the prosecution certifies* . . . that the appeal is not taken for the purposes of delay and the evidence is a

---

[3] C.A.R. 4.1(a) parallels the language in section 16-12-102(2). C.A.R. 4.1(a) ("The state may file an interlocutory appeal in the Supreme Court from a ruling of a district court granting a motion . . . to suppress evidence . . . provided that the state certifies to the judge who granted such motion and to the Supreme Court that the appeal is not taken for purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.").

7

substantial part of the proof of the charge pending against the defendant." (Emphasis added.) Nowhere does the statute say—or even suggest—that this court has a role in deciding whether the suppressed evidence is in fact a substantial part of the proof against a defendant. In my view, the statute is clear and unambiguous, but the dissent authored by Justice Márquez disagrees and finds an ambiguity in the statutory language.

¶45 In finding an ambiguity, the dissent reformats the statute and reads in a new "objective standard" requiring that the suppressed evidence be a substantial part of the proof against a defendant. Márquez, J., diss. op. ¶ 59. But reading this "objective standard" into the statute is flawed for a number of reasons. First, with two parallel clauses—"the appeal is not taken for the purposes of delay" and "the evidence is a substantial part of the proof"—yet only one identified actor, it seems unlikely that the legislature intended the phrase "if the prosecution certifies" to modify only one of those two parallel clauses. Second, had the legislature intended that the second clause be a separate, objective standard, it would have included a comma after "purposes of delay" to create two independent clauses. That sentence, however, does not contain any punctuation. Finally, it strikes me as implausible that the legislature added an objective standard onto the end of a conditional sentence without identifying any actor responsible for meeting or reviewing that standard. This reading by the dissent goes beyond the plain

8

language of the statute because the legislature *did* identify an actor: the prosecution.    And the legislature requires this actor to "certify"—not "demonstrate" or "establish"—that the evidence is a substantial part of the proof. Therefore, the statute unambiguously conditions the prosecution's ability to file an interlocutory appeal on the prosecution's certification alone, and not this court's determination that an objective standard has been met.

¶46    Syntax aside, the statute's certification requirement is purposeful.    By specifically requiring the prosecution to "certify" that the suppressed evidence is a substantial part of the proof against a defendant, the General Assembly intended "that the [prosecution's] decision to take an interlocutory appeal be a serious, considered judgment, not simply an administrative formality." *See United States v. W.R. Grace*, 526 F.3d 499, 507–08 (9th Cir. 2008).  To certify means "[t]o authenticate or verify in writing" and "[t]o attest as being true or as meeting certain criteria." *Certify*, Black's Law Dictionary (11th ed. 2019).    Thus, because interlocutory appeals necessarily interrupt proceedings, the certification requirement ensures that the prosecution "has evaluated whether the appeal is warranted." *W.R. Grace*, 526 F.3d at 508 (quoting *United States v. McNeill*, 484 F.3d 301, 308 (4th Cir. 2007)). Thereby, the statute minimizes concerns over frivolous appeals by requiring "wise and careful invocation" of section 16-12-102(2).  *See W.R. Grace*, 526 F.3d at 508.  If a prosecutor certifies that suppressed evidence is a substantial part of the proof

when it is not, we have an ethical issue—not an evidentiary issue for this court's review. Because I see this only as an ethical issue, I cannot stand alongside my colleagues as they suggest we audit prosecutors' highly factual decisions.

¶47 Indeed, in case after case we mention our jurisdiction under section 16-12-102(2) by simply dropping a footnote to acknowledge the prosecution's certification that the suppressed evidence is substantial. *See, e.g.*, *People v. Cox*, 2017 CO 8, ¶ 10 n.3, 401 P.3d 509, 511 n.3 ("The People certified that this appeal was not taken for the purposes of delay and that the evidence suppressed is a substantial part of the proof in the People's case."); *People v. Ashford*, 2020 CO 16, ¶ 8 n.1, 458 P.3d 124, 126 n.1 (same); *People v. Threlkel*, 2019 CO 18, ¶ 12 n.2, 438 P.3d 722, 726 n.2 (same); *People v. Brown*, 2019 CO 63, ¶ 8 n.2, 461 P.3d 1, 2 n.2 (same); *People v. Shoen*, 2017 CO 65, ¶ 6 n.2, 395 P.3d 327, 330 n.2 (same); *People v. Chavez-Barragan*, 2016 CO 16, ¶ 7 n.2, 365 P.3d 981, 983 n.2 (same); *People v. Delacruz*, 2016 CO 76, ¶ 1 n.1, 384 P.3d 349, 351 n.1 (same); *People v. N.A.S.*, 2014 CO 65, ¶ 4 n.5, 329 P.3d 285, 288 n.5 (same). We do this because we have consistently recognized that it is the role of prosecutors to make informed and careful certifications, and it is not our role to determine whether the prosecution has properly assessed the value of the suppressed evidence. The warning issued by the majority and elaborated upon in the dissent would render the prosecution's certification superfluous and add a layer of review where we would weigh the

10

substantiality of evidence. Neither the statute nor the rule contemplates such review.

¶48 Therefore, by effectively adding language to the statute, the majority and Justice Márquez's dissent suggest we encroach on prosecutorial decisions, with no guiding standards, and assess the value of evidence on the prosecution's behalf. Regardless of the standard employed, such an assessment can only be categorized as making a finding. This court has never been, and never should be, in the business of making findings. As stated more eloquently by the Seventh Circuit: It is not our place to interject because there is "no basis on which, in advance of trial, [this court] could determine that the evidence that the government wished to use was so unimportant to any rational prosecutorial strategy that the appeal was frivolous." *United States v. Centracchio*, 236 F.3d 812, 813 (7th Cir. 2001).

¶49 It is true that this court has set aside the prosecution's certification in a few cases, concluding that the suppressed evidence was not substantial. *People v. MacCallum*, 925 P.2d 758, 765–66 (Colo. 1996); *People v. Mounts*, 801 P.2d 1199, 1202 (Colo. 1990); *People v. Garner*, 736 P.2d 413, 414 (Colo. 1987); *People v. Valdez*, 621 P.2d 332, 333 (Colo. 1981). I would overturn those cases.[4] Moreover, in the

---

[4] While I respect stare decisis, when an opinion is ill-conceived, stare decisis must yield. *See Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 125 (Colo. 2007).

vast majority of cases, we use a footnote to briefly acknowledge the prosecution's certification. Thus, because we have not done what the majority portends for nineteen years, it is no surprise that the prosecution did not submit additional evidence in support of its certification in this case. Yet today, despite our well-established previous practice, the majority clearly telegraphs that this court will begin weighing evidence in interlocutory appeals. I submit that review of such evidence would be a highly speculative task.

¶50 Importantly, we, unlike the parties, lack intimate familiarity with the facts of the case. For any meaningful review, we would need to require that the prosecution provide additional proof to inform our unwarranted review of prosecutorial strategies, theories of guilt, evidence already in the record, anticipated defenses, and potential challenges to proposed evidence, all alongside the suppressed evidence itself. Further, we would need to extrapolate a standard of review and a rule for determining when suppressed evidence is substantial versus important, or merely significant but inconsequential. I caution against conjuring up such new standards out of whole cloth, especially where

Thus, I would overturn *MacCallum*, *Mounts*, *Garner* and *Valdez* because they contravene the plain language of section 16-12-102(2).

implementation of those standards would swallow interlocutory appeals altogether.[5]

¶51 Finally, and very significantly, federal courts have noted the dangers of the majority's plan, and accordingly, have concluded that the prosecution's certification of substantiality is sufficient on its own. I suggest we follow this purposeful approach.

¶52 The federal statute similarly allows the prosecution to pursue an interlocutory appeal if it certifies that the appeal is not taken for the purpose of delay and the suppressed evidence "is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731 (2018). The dissent's interpretation of our state-equivalent rule is not supported by a single federal circuit. Rather, *every circuit* that has analyzed whether an appellate court has authority to review the substantiality of evidence has concluded that the government's certification alone is sufficient. *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008) ("[W]e now hold that a certification by a United States Attorney . . . that the evidence is substantial proof of a fact material in the proceeding is sufficient for purposes of

---

[5] Under the proposed rule in Justice Márquez's dissent, this court will be burdened with reviewing the substantiality of evidence rather than the merits of interlocutory appeals.

13

establishing our jurisdiction under [section] 3731."); *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000) ("[W]e need not examine whether [the suppressed evidence] would actually be substantial proof of a material fact. The government has so certified; that suffices."); *United States v. Centracchio*, 236 F.3d 812, 813 (7th Cir. 2001) ("We therefore treat as conclusive of our jurisdiction over a [section 3731] appeal the submission of the certification required by the statute."); *United States v. Jefferson*, 623 F.3d 227, 232 (5th Cir. 2010) ("The statute is clear—the United States Attorney's certification . . . that the evidence excluded by the district court's order is a substantial proof of a fact material in the proceeding is the final word on materiality for the purposes of determining whether we have jurisdiction to hear the appeal."); *In Re Grand Jury Investigation,* 599 F.2d 1224, 1226 (3d Cir. 1979) ("[W]e are not required by section 3731 to evaluate independently the substantiality or the materiality of the contested material."); *United States v. Moskowitz*, 702 F.3d 731, 734–35 (2d Cir. 2012) ("[T]he U.S. Attorney's certification that 'the evidence is a substantial proof of a fact material in the proceeding' is conclusive of that issue for purposes of section 3731, and is therefore alone sufficient to vest us with jurisdiction under section 3731 of timely appeals from

14

orders suppressing evidence.").[6]    These appellate courts recognize—as contemplated by the statute—that the decision to file an interlocutory appeal carries considerable weight, and accordingly, decline to second-guess prosecutors' reasoned judgment.  We should do the same.

¶53    For all of these reasons, I respectfully, but nonetheless strongly, dissent.

---

[6] The First, Fourth, Sixth, Tenth, and Eleventh Circuits have not directly decided this issue.  The Fourth and Sixth Circuits, however, have at least hinted that they would follow the majority of circuits.  *See United States v. Day*, 591 F.3d 679, 682 (4th Cir. 2010) ("[T]he [prosecution] has certified that . . . the excluded evidence constitutes 'a substantial proof of a fact material in the proceeding.'  We thus possess jurisdiction pursuant to the provisions of [section] 3731." (citation omitted)); *United States v. Ellison*, 462 F.3d 557, 559 (6th Cir. 2006) ("This court has jurisdiction . . . under [section] 3731, as the government has certified that the appeal is not taken for the purposes of delay and that the evidence is a substantial proof of a fact material to the proceeding.").  The Tenth and Eleventh Circuits appear to follow the practice of briefly noting jurisdiction under section 3731 without assessing the materiality of suppressed evidence independent of the prosecution's certification.  *See United States v. Yepa*, 572 F. App'x 577, 578 n.2 (10th Cir. 2014); *United States v. Nunez*, 455 F.3d 1223, 1224 n.1 (11th Cir. 2006).  And, no court in the First Circuit has seriously questioned a prosecutor's certification.  *See, e.g.*, *United States v. Rakes*, 136 F.3d 1, 3 (1st Cir. 1998) ("We will assume *arguendo* the relevance of the suppressed conversations to the government's prosecution.").

JUSTICE MÁRQUEZ, dissenting.

¶54     I respectfully dissent.  Section 16-12-102(2), C.R.S. (2020), vests this court with jurisdiction to review the prosecution's interlocutory appeal of an order suppressing evidence that constitutes "a substantial part of the proof of the charge pending against the defendant."  Colorado Appellate Rule 4.1(a) tracks this statutory language.  While we routinely accept the prosecution's certification that the evidence at issue is a substantial part of its proof of the pending charge, we've also repeatedly made clear that "the prosecution's brief and the record must support the certification."  *People v. Mounts*, 801 P.2d 1199, 1202 (Colo. 1990).  In reviewing the certification that is necessary to invoke our jurisdiction, we do not second-guess prosecution trial strategy, particularly early in the development of a case.  Here, however, the prosecution's certification is simply unsupported by the briefing and record before us.  The People have failed to even identify the evidence at issue, and it is not apparent from the briefing or the record how such evidence forms a substantial part of the proof of the pending charges.  This case represents a rare example of the People's failure to clear what is an admittedly low bar set by section 16-12-102(2) and C.A.R. 4.1(a).  Thus, because the requirement to invoke our jurisdiction has not been met in this case, I would dismiss the appeal.

¶55     The majority acknowledges Thompson's contention that the People's certification under section 16-12-102(2) and C.A.R. 4.1(a) was inadequate.  Maj. op.

1

¶ 14.   Nevertheless, the majority summarily "conclude[s] that we have jurisdiction" without further analysis because it believes the parties did not have sufficient notice of a purported conflict in our case law concerning our approach to jurisdiction in interlocutory appeals like this one. *See id.* Even assuming there is an actual conflict, it is difficult to understand how the parties could not be on notice of our case law reaching back forty years on this point. Moreover, Thompson raised the jurisdictional issue at his first opportunity to do so—in his answer brief—and both parties fully briefed the issue.

¶56    The jurisdictional issue is thus squarely presented, and the majority's refusal to address it marks a departure from our consistent past practice. Generally, where the defendant has raised a serious challenge to the validity of the prosecution's certification, we have directly addressed that challenge and independently reviewed the sufficiency of the certification to satisfy ourselves of our power to entertain the appeal. *See Matheny*, 46 P.3d at 457–58; *People v. A.W.*, 982 P.2d 842, 845 n.2 (Colo. 1999); *People v. MacCallum*, 925 P.2d 758, 765–66 (Colo. 1996); *Mounts*, 801 P.2d at 1202; *People v. Mendoza-Rodriguez*, 790 P.2d 810, 813 (Colo. 1990); *People v. Dist. Ct.*, 785 P.2d 141, 144 (Colo. 1990); *People v. Garner*, 736 P.2d 413, 413–14 (Colo. 1987); *People v. Valdez*, 621 P.2d 332, 333 (Colo. 1981). This threshold inquiry is necessary because "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists." *Christianson v.*

2

*Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988). Consistent with this principle, it has always been our practice to "first determine whether we have jurisdiction to hear the merits of [the] case." *People v. Braunthal*, 31 P.3d 167, 171 (Colo. 2001). In departing from this practice, the majority establishes a concerning precedent that effectively strips the certification requirement of any real meaning.

## I. Principles of Statutory Interpretation

¶57 When construing a statute, we first look to the plain language to effectuate the legislature's intent. *Martinez v. People*, 2020 CO 3, ¶ 9, 455 P.3d 752, 755. If the plain language is clear, we apply it as written. *Id.* However, if the language is ambiguous, we may turn to aids of statutory construction to discern the legislature's intent, including the consequences of a particular construction and the goals of the statute. *Id.* A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *Lobato v. Indus. Claim Appeals Off.*, 105 P.3d 220, 225 (Colo. 2005). We employ these same principles of statutory construction when interpreting our court rules. *People v. G.S.*, 2018 CO 31, ¶ 32, 416 P.3d 905, 913.

## II. Section 16-12-102(2)'s "Substantial Part of the Proof" Requirement

¶58 Our constitution grants this court jurisdiction to exercise appellate review only over "final judgment[s]" and "other appellate review as may be provided by law." Colo. Const. art. VI, § 2(2). Thus, we do not have jurisdiction to "review interlocutory orders without specific authorization by statute or rule." *Scott v.*

3

*Scott*, 136 P.3d 892, 897 (Colo. 2006) (quoting *Mission Viejo Co. v. Willows Water Dist.*, 818 P.2d 254, 258 (Colo. 1991)). The People seek to invoke this court's interlocutory jurisdiction under section 16-12-102(2) and C.A.R. 4.1(a), both of which provide:

> The prosecution may file an interlocutory appeal in the supreme court from a ruling of the trial court granting a motion . . . to suppress evidence . . . if the prosecution certifies to the judge who granted such motion and to the supreme court that the appeal is not taken for the purposes of delay *and the evidence is a substantial part of the proof* of the charge pending against the defendant.

§ 16-12-102(2) (emphasis added); *see* C.A.R. 4.1(a) (substantially similar). Though these provisions permit an appeal as of right where our jurisdiction is properly invoked, "[i]t is the responsibility of the prosecution in C.A.R. 4.1 appeals to provide this court with sufficient relevant portions of the trial proceedings to permit application of the appropriate legal standards." *People v. Thompson*, 770 P.2d 1282, 1283 n.1 (Colo. 1989).

¶59 I note that the "substantial part of the proof" requirement in section 16-12-102(2) and C.A.R. 4.1(a) is susceptible to two equally plausible readings. Under one reading, the phrase "if the prosecution certifies . . . that" modifies both "the appeal is not taken for the purposes of delay" and "the evidence is a substantial part of the proof of the charge pending against the defendant." Under this interpretation, the People need only *certify* that the evidence is a substantial part of the proof of the pending charge; that the evidence

4

actually *be* a substantial part of the proof is not an independent requirement to invoke our jurisdiction.  But under an equally plausible reading, the phrase "if the prosecution certifies" modifies only "that the appeal is not taken for the purposes of delay," and the "substantial part of the proof" requirement stands alone as a separate, objective standard.[1]

¶60    This court has not consistently adhered to one reading or the other.  In two of our more recent cases, we have inserted a second "that" into this key language in section 16-12-102(2) and C.A.R. 4.1(a), suggesting the prosecution need only provide a pro forma certification that the evidence is a substantial part of the proof

---

[1] To illustrate these two plausible readings of this language, it is helpful to insert hypothetical numbered subsections.  Under the first view, our interlocutory jurisdiction may be invoked if the prosecution certifies two things to the court:

> The prosecution may file an interlocutory appeal . . . if the prosecution certifies . . . that:
>
> *[1]* the appeal is not taken for the purposes of delay and
>
> *[2]* the evidence is a substantial part of the proof of the charge pending against the defendant.

Under the second view, our interlocutory jurisdiction may be invoked if two conditions are met:

> The prosecution may file an interlocutory appeal . . . if:
>
> *[1]* the prosecution certifies . . . that the appeal is not taken for the purposes of delay and
>
> *[2]* the evidence is a substantial part of the proof of the charge pending against the defendant.

5

against the defendant without the need for substantiation or any further inquiry on our part. *See, e.g.*, *Threlkel*, ¶ 12 n.2, 438 P.3d at 726 n.2 (noting that jurisdiction was appropriate because the People had "certif[ied] that the appeal is not taken for purposes of delay and *that* the evidence is a substantial part of the proof" (emphasis added)); *People v. Chavez-Barragan*, 2016 CO 16, ¶ 7 n.2, 365 P.3d 981, 983 n.2 ("The People certified that this appeal was not taken for purposes of delay and *that* the suppressed evidence constituted a substantial part of the proof . . . ." (emphasis added)). But in a host of other decisions, we have consistently "refused to address substantive issues raised by the prosecution when *our independent review of the record convinces us that*" the evidence at issue "*does not form a 'substantial part' of the proof* which may be offered against the defendant." *MacCallum*, 925 P.2d at 765 (emphases added); *see also Matheny*, 46 P.3d at 458; *Mounts*, 801 P.2d at 1202; *Garner*, 736 P.2d at 413–14; *Valdez*, 621 P.2d at 333.

¶61    The legislative intent behind section 16-12-102(2) and the practical effect of both constructions suggest that this latter approach is the best way to resolve the ambiguity in the statute. First, the qualifying language in section 16-12-102(2) evinces a "legislative intent to limit interlocutory appeals." *See People v. Young*, 814 P.2d 834, 837 (Colo. 1991), *superseded by statute on other grounds*, Ch. 292, sec. 8, § 16-12-102(1), 1993 Colo. Sess. Laws 1725, 1728. Accordingly, we have repeatedly recognized that "[t]he statute and the rule provide 'extremely narrow' grounds for

6

an interlocutory appeal by the prosecution." *People v. Null*, 233 P.3d 670, 674 (Colo. 2010) (quoting *Braunthal*, 31 P.3d at 171); *see also People v. Smith*, 254 P.3d 1158, 1160 (Colo. 2011). Ensuring that jurisdiction is exercised only when the evidence at issue forms an objectively substantial part of the proof ensures that the narrow scope of the statute and rule is maintained.

¶62 Second, treating the "substantial proof" language as an objective requirement is also the only construction of section 16-12-102(2) that ensures that this gatekeeping requirement serves any real purpose. To construe the statute and our rule to require us to automatically accept the People's certification would effectively cede the determination of this court's jurisdiction to one set of litigants before us. But it is this court's role to determine whether it has jurisdiction to act. *See Guthrie v. Barda*, 533 P.2d 487, 488 (Colo. 1975) ("Whether a court has jurisdiction to proceed is a matter to be determined *by the court . . . .*" (emphasis added)); *Triebelhorn v. Turzanski*, 370 P.2d 757, 759 (Colo. 1962) (noting that a court "cannot acquire jurisdiction even though the parties expressly or impliedly consent thereto").

¶63 Finally, federal caselaw interpreting 18 U.S.C. § 3731 (2018), is unhelpful in construing section 16-12-102(2) and C.A.R. 4.1. Unlike section 16-12-102(2), section 3731 contains a second "that," eliminating any textual ambiguity. ("An appeal by the United States shall lie . . . if the United States attorney certifies . . .

7

*that* the appeal is not taken for purpose of delay and *that* the evidence is a substantial proof of a fact material in the proceeding." (emphases added)). Federal courts interpreting the "substantial proof" requirement of section 3731 to pertain only to the prosecution's certification are thus following the clear statutory language of the federal provision—language that does not exist in section 16-12-102(2). Moreover, the appeals process under section 3731 includes notable additional guardrails—including a requirement that the United States Solicitor General approve the certification—for which there are no analogues in section 16-12-102(2). *See United States v. W.R. Grace*, 526 F.3d 499, 506–08 (9th Cir. 2008). Thus, the balance struck by section 3731, while perhaps appropriate at the federal level, should not dictate our approach under section 16-12-102(2).[2]

---

[2] The federal approach to interlocutory appeals filed by the prosecution has not been uniformly adopted by our sister states, which have instead adopted a wide variety of approaches. *See, e.g.*, N.H. Rev. Stat. Ann. § 606:10(II)(a), (V) (2020) (prosecution may appeal any suppression order so long as the attorney general approves of the appeal); N.Y. Crim. Proc. Law § 450.50(1) (McKinney 2020) (interlocutory appeal allowed if the prosecution files a statement asserting that, without the suppressed evidence, "any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed"); Okla. Stat. tit. 22, § 1053(5) (2020) (interlocutory appeal allowed "where appellate review of the issue would be in the best interests of justice"); Or. Rev. Stat. § 138.045(1)(d) (2020) (prosecution may appeal any suppression order).

¶64 Permitting C.A.R. 4.1 jurisdiction only where there has been suppression of evidence constituting an objectively substantial part of the proof does not present a high bar for the prosecution and will not hinder most efforts to seek interlocutory review. Generally, the relevance of the evidence at issue will be obvious, and we will defer to prosecutorial discretion in matters of trial strategy. But, as this case demonstrates, an objective inquiry does make a difference where "the prosecution's certification is in the form, and contains the words, required by C.A.R. 4.1(a), but the prosecution's brief and the record do not support this certification." *Matheny*, 46 P.3d at 458.

## III. Application

¶65 This appeal arises out of the district court's suppression of evidence obtained through a search of Thompson's phone. So, what exactly is the purportedly "substantial" evidence that the People seek to admit? The People do not discuss the nature of the evidence at issue in their notice of appeal—where they certified that the evidence forms a "substantial part of the proof of the charges pending" against Thompson—or anywhere in their opening brief. Only in their reply brief have the People provided an inkling of the evidence at issue, pointing to an exchange between the district court and the prosecution at the suppression hearing. There, in response to the district court's question asking the People what it was they were trying to admit, counsel responded:

9

I have not done a thorough review of the phone. All I do know is there could be—I don't believe there's any text messages on the phone. I think there could be some references to Google searching regarding firearms, and there may be some videos on the phone as well.

¶66 In their reply brief, the People admit that this description is "vague," but nonetheless assert that Thompson's Google search history will be used to support "a variety of elements" and is "probative of his consciousness of guilt." The inability to identify with any certainty what the evidence is fails to rise to the level of a "substantial part of the proof" under even the most permissive interpretation of that standard. Indeed, the only actual description of the evidence we have before us is from trial counsel, who admitted that she "ha[d] not done a thorough review of the phone." And that description was hedged by a number of qualifiers: "I think," "there could be," and "there may be." Under these circumstances, I cannot credit the People's certification that this evidence forms a substantial part of their proof against Thompson. Accordingly, because neither the People's certification nor the record reveals what evidence is at issue here or how it forms a substantial part of the proof of the charges filed against Thompson, we cannot exercise jurisdiction over this interlocutory appeal.

## IV. Conclusion

¶67 I greatly respect the People's discretion in building its case and do not purport to second-guess trial strategy. But the People here seek to invoke this

10

court's jurisdiction—jurisdiction that the General Assembly has granted us only in "extremely narrow" circumstances. *Smith*, 254 P.3d at 1160. This court thus has a duty to independently satisfy ourselves that we are operating within those narrow jurisdictional confines.

¶68 The statutory language of section 16-12-102(2), echoed in C.A.R. 4.1(a), should mean what it says: Our court only has jurisdiction to review suppression rulings affecting evidence that constitutes a "substantial part of the proof of the charge pending against the defendant." As I have noted in the past, this requirement is a real, jurisdictional prerequisite to our exercise of review and should be treated as such. *See People v. N.A.S.*, 2014 CO 65, ¶¶ 60–67, 329 P.3d 285, 298–300 (Márquez, J., dissenting); *People v. Thames*, 2015 CO 18, ¶¶ 29–36, 344 P.3d 891, 899–900 (Márquez, J., dissenting). "Substantial part of the proof" is not a high bar, but it at least requires the evidence to be identifiable in the briefing or record before us. In this rare case, that minimal requirement has not been met, and this court's jurisdiction has not been properly invoked. Accordingly, because I would dismiss the People's appeal for lack of jurisdiction, I respectfully dissent.