# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
    )
    )
v.     )      I.D. Nos. 1605012921A
    )
    )
DIAMONTE TAYLOR,     )
    )
Defendant.     )

## MEMORANDUM OPINION

Submitted:  November 2, 2023
Decided: November 28, 2023

*Upon Consideration of Defendant's Motion to Suppress*,
**DENIED.**

William H. Leonard, Esquire, John S. Taylor, Esquire, and Isaac A. Rank, Esquire Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State*.

Benjamin S. Gifford, IV, Esquire, The Law Office of Benjamin S. Gifford, IV, Wilmington, Delaware, and John A. Barber, Esquire, The Law Office of John A. Barber, Wilmington, Delaware.  *Attorneys for Defendant.*

**MEDINILLA, J.**

## I. INTRODUCTION

Defendant Diamonte Taylor was previously convicted of and sentenced to life for first-degree murder and other gang-related crimes. On direct appeal, the Delaware Supreme Court found that the search warrant used to obtain evidence from his two smartphones was an unconstitutional general warrant, held that introduction of that evidence was not harmless, reversed Taylor's murder and related convictions, and remanded the case for a new trial. In preparation for that new trial the State obtained a second warrant to search and seize information from Taylor's two phones. Taylor is to be retried in the coming week. And he has now moved to suppress the evidence gathered via that second warrant. Taylor has also moved to exclude recordings of his communications from Department of Correction's facilities that were obtained via an Attorney General's subpoena. The Court issued a ruling on these requests several weeks ago. For the reasons stated below, Taylor's Motion to Suppress is **DENIED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Diamonte Taylor was arrested by the Wilmington Police Department and the United States Marshals Service ("USMS") on June 1, 2016, in relation to several gang-related shootings in May of 2016.[1] He was subsequently indicted for Murder

---

[1] State's Response to Defendant's Motion to Suppress ¶ 1 (D.I. 163) (hereinafter, "State's Resp. to Def.'s Mot. to Suppress").

in the First Degree, Gang Participation, Conspiracy in the First Degree, and multiple other violent felonies alleged to have taken place between January 23, 2015, and June 1, 2016.[2]

When Taylor was arrested, USMS found two smartphones on him.[3] Law enforcement applied for a warrant to search those two phones ("First Search Warrant").[4] In his supporting affidavit, the applicant officer described the gang-related shootings and the personal connections amongst the gang members.[5] On June 16, 2016, the First Search Warrant was approved by the Justice of the Peace Court and granted permission to search for and seize:

> *any/all* data stored by whatever means, or through normal course of business of wireless services, and/or through the forensic examination of said cellular telephone, *to include but not limited to* registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, user names, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar information/data indicia of communication, and any other information/data pertinent to this investigation within said scope.[6]

Before his first trial, Taylor filed a motion to suppress all evidence from the

---

[2] Defendant's Motion to Suppress ¶ 1 (D.I. 162) (hereinafter, "Def.'s Mot. to Suppress").

[3] State's Resp. to Def.'s Mot. to Suppress ¶ 1.

[4] *Taylor v. State*, 260 A.3d 602, 609 (Del. 2021).

[5] *Id.*

[6] *Id.* (emphasis added).

two phones, arguing that the First Search Warrant was an unconstitutional general warrant.[7] This Court denied the motion.[8] A jury convicted Taylor of Murder in the First Degree, Gang Participation, Assault First Degree, two counts of Reckless Endangering First Degree, two counts of Aggravated Menacing, and numerous related firearm offenses.[9] He was sentenced to, *inter alia*, a mandatory life sentence for the first-degree murder count.[10]

Taylor filed a direct appeal.[11] In September 2021, the Delaware Supreme Court issued its decision reversing this Court's judgment on the suppression issue, vacating Taylor's convictions, and remanding the matter for a new trial.[12] The Supreme Court held that the First Search Warrant was an unconstitutional general warrant that lacked the requisite particularity and "allowed investigators to conduct an unconstitutional rummaging through all of the contents of Taylor's smartphones to find whatever they decided might be of interest to their investigation."[13]

With the matter now set for retrial, the State, on January 4, 2022, applied for and was granted a second search warrant ("Second Search Warrant") allowing

---

[7]  D.I. 53.

[8]  D.I. 61.

[9]  D.I. 77.

[10]  D.I. 105.

[11]  Notice of Appeal filed on March 2, 2020 (D.I. 106).

[12]  *Taylor*, 260 A.3d at 619.

[13]  *Id.* at 615.

search of the same two phones.[14]   The Second Search Warrant, approved by a Superior Court judge with knowledge of the Supreme Court's ruling, authorized seizure of:

> data stored through normal course of business of wireless services, and/or through the forensic examination of said cellular telephone, to include registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, user names, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar information/data indicia of communication, within the time frame of May 1, 2016 to June 1, 2016.[15]

The affidavit to the Second Search Warrant explained that Taylor maintained public social media accounts where he posted photographs depicting gang members displaying gang signs via hand gestures.[16]   Other photographs on those accounts included Taylor holding or displaying firearms.[17]   The affidavit concluded that "the most convenient and popular mode of accessing and utilizing social media is a personal cellular phone. . . . therefore, [] evidence of the ongoing gang feud and the recent shootings where [Taylor] is a suspect would be located on his cellular phones."[18]   Finally, there was a specific averment that the Second Search Warrant's

---

[14]   Def.'s Mot. to Suppress ¶ 7.

[15]   Def.'s Mot. to Suppress, Ex. A.

[16]   *Id.* Ex. A ¶ 14.

[17]   *Id.*

[18]   *Id.*

affidavit did "not contain any evidence that was obtained after the initial June 10, 2016, warrant application or from evidence obtained from the download of the cellular devices at issue."[19]

Several months later, while investigating and preparing for the second trial, the Department of Justice served a subpoena *duces tecum* on the Delaware Department of Corrections ("DDOC").[20] This subpoena commanded the DDOC provide:

> [A]ll records regarding telephone and/or visiting room conversations for [Taylor] including, but not limited to any and all available approved phone number lists, GTL outgoing call log entries and conversations; video calls; tablet text messages; in-person meeting recordings; non-legal incoming and outgoing mail for the time period of April 21, 2018 through the present to be updated on a weekly basis until further notice.[21]

The State provided defense counsel with the materials obtained under this subpoena.[22]

Taylor filed a Motion to Suppress the evidence obtained from his two phones in its entirety as well as the evidence obtained from the DDOC via the later subpoena.[23] The State filed a written response.[24] And the parties docketed post-

---

[19] *Id.* Ex. A ¶ 25.

[20] Def.'s Mot. to Suppress, Ex. B.

[21] *Id.*

[22] Def.'s Mot. to Suppress ¶ 10.

[23] *See* Def.'s Mot. to Suppress.

[24] *See* State's Resp. to Def.'s Mot. to Suppress.

hearing supplements on June 30, 2023.[25]

While the matter was pending decision, the Court asked the parties to address the Delaware Supreme Court's recent ruling in *Thomas v. State*.[26] Both parties filed written supplements.[27] The Court then heard oral arguments during a conference conducted earlier this month.[28] The next week, the Court notified parties of its decision to deny the Motion to Suppress with a written explanation of that ruling to follow.[29] Taylor's re-trial is scheduled to begin on December 4, 2023.[30]

### III. PARTIES' CONTENTIONS

Taylor argues four grounds for suppression of the evidence he seeks to exclude.[31] First, he contends that the Second Search Warrant is barred by the Law of the Case Doctrine and the Mandate Rule.[32] In Taylor's view, the plain language of the Supreme Court's decision striking the First Search Warrant requires

---

[25] Defendant's Post-Hearing Supplement (D.I. 167) (hereinafter, "Def.'s Post-Hearing Suppl."); State's Response to Defendant's Post-Hearing Supplement (D.I. 169) (hereinafter, "State's Resp. to Def.'s Post-Hearing Suppl.").

[26] Court's Letter dated 10-25-2023 (D.I. 176) (hereinafter, "Ct.'s Letter dated 10-25-2023").

[27] Defendant's Response to Court's Letter dated 10-25-2023 (D.I. 177) (hereinafter, "Def.'s Resp. to Ct.'s Letter dated 10-25-2023"); State's Response to Court's Letter dated 10-25-2023 (D.I. 178) (hereinafter, "State's Resp. to Ct.'s Letter dated 10-25-2023").

[28] Status Conference dated 11-02-2023 (D.I. 180) (hereinafter, "Status Conference dated 11-02-2023").

[29] Court's Letter dated 11-09-2023 (D.I. 181) (hereinafter, "Ct.'s Letter dated 11-09-2023").

[30] Status Conference dated 11-02-2023.

[31] *See* Def.'s Mot. to Suppress.

[32] Def.'s Mot. to Suppress ¶¶ 12-19.

suppression of the evidence gathered through execution of the Second Search Warrant. To Taylor, "[t]he Supreme Court's mandate could not be clearer: [Taylor] is to be retried barring all taint from the fruits of the first general search warrant."[33] Second, Taylor says that application of the Independent Source Doctrine is improper and contrary to the search and seizure jurisprudence regarding electronic devices.[34] Specifically, that "[w]ith the Second Warrant, the State seeks to wield the independent source doctrine to eviscerate the heightened privacy protections that blossomed in *Riley* and ultimately bloomed in *Wheeler*, *Buckham*, and *Taylor*."[35] Third, Taylor argues that the Second Search Warrant again fails the particularity requirement.[36] Taylor posits that simply removing the terms "any/all" from the beginning of the search warrant is just an illusory change; the Second Search Warrant has remained substantively the same.[37] Fourth, Taylor complains that the subpoena served by the State on the DDOC was unreasonable and any evidence obtained under it should be excluded.[38]

In response, the State first insists that the Second Search Warrant passes

---

[33]  *Id.* ¶ 19.

[34]  *Id.* ¶¶ 20-29.

[35]  *Id.* ¶ 23.

[36]  *Id.* ¶¶ 30-35.

[37]  *Id.* ¶¶ 33-34.

[38]  Def.'s Mot. to Suppress ¶¶ 36-46.

constitutional muster under the Independent Source Doctrine.[39]  Second, that the Second Search Warrant satisfies the particularity requirement and "within its four corners, contains profound evidence of criminality."[40]  Third, that the Law of the Case Doctrine and the Mandate Rule are inapplicable because the Supreme Court's earlier decision focused on the defective form of the First Search Warrant, and did not prohibit a second warrant attempt.[41]  Fourth, the State contends that the subpoena to DDOC was proper,[42] and that the scope of the communications sought was reasonable.[43]

## IV.  APPLICABLE LEGAL STANDARDS

### A. Search Warrants

Eleven *Del. C.* § 2306 governs the issuance of search warrants and ensures compliance with the United States and Delaware Constitutions.  In relevant part, Delaware search warrants must:

> [D]esignate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person

---

[39]  State's Resp. to Def.'s Mot. to Suppress ¶¶ 9-17.

[40]  *Id.* ¶¶ 18-20.

[41]  *Id.* ¶¶ 21-23.

[42]  *Id.* ¶¶ 24-35.

[43]  *Id.* ¶¶ 36-38.

designated and shall recite the facts upon which such suspicion is founded.[44]

Our Supreme Court has instructed that a finding of probable cause "must be based on the information that appears within the four corners of the application or affidavit."[45] And that a judge may find probable cause "when, considering the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[46] This Court's Criminal Rule 41 requires that a motion to suppress ". . . state the grounds upon which it is made with sufficient specificity to give the state reasonable notice of the issues and to enable the court to determine what proceedings are appropriate to address them."[47]

In recent years, our Supreme Court has recognized the constitutional challenges unique to search warrants issued for electronic devices and has explained "that a warrant—no matter its target—must both 'describe the things to be searched with *sufficient particularity* and be no broader than the probable cause on which it

---

[44] 11 *Del. C.* § 2306.

[45] *Anderson v. State*, 249 A.3d 785, 795 (Del. 2021) (citing *Valentine v. State*, 207 A.3d 566, 570 (Del. 2019)).

[46] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (citing *Stones v. State*, 676 A.2d 907 (Del. 1996)).

[47] Super. Ct. Crim. R. 41(f) (The court shall receive evidence on any issue of fact necessary to the decision of the motion, but the court shall not receive evidence on motions challenging the manner of execution of a search warrant or the veracity of a sworn statement used to procure a search warrant unless the motions are supported by affidavits, or their absence is satisfactorily explained in the motion, and the allegedly false statement is necessary to the finding of probable cause.)

is based.'"[48] The Court has also cautioned that because of the volume of sensitive information stored on a smartphone, searches should be as limited as possible to avoid "exploratory rummaging" in a person's other irrelevant information and belongings.[49]

## B. Attorney General Subpoenas

Twenty-nine *Del. C.* § 2504 sets forth the powers, duties and authority of the Department of Justice including the power to "investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith."[50]

## V. DISCUSSION

The Fourth Amendment to the United States Constitution guarantees:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[51]

The Fourth Amendment functions "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[52] The United

---

[48] *Buckham v. State*, 185 A.3d 1, 18 (Del. 2018) (citing *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016)) (emphasis added).

[49] *Buckham,* 185 A.3d at 18 (citing *Wheeler*, 135 A.3d at 298).

[50] 29 *Del. C.* § 2504(4).

[51] U.S. CONST. amend. IV.

[52] *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967).

States Supreme Court has made clear that search warrants are not mere formalities but serve a critical function.[53]

> Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police . . . . The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing; and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police . . . .[54]

The Fourth Amendment prohibits general warrants that allow "exploratory rummaging in a person's belongings," and addresses this problem by requiring a 'particular description' of the things to be seized.[55]  In order for a search warrant to be deemed constitutional, it must conform to this particularity requirement.[56]  And "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."[57]

Article I § 6 of the Delaware State Constitution provides a similar guarantee that:

> The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall

---

[53]  *McDonald v. United States*, 335 U.S. 451, 455 (1948).

[54]  *McDonald*, 335 U.S. at 455–56.

[55]  *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

[56]  *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (citing *Stanford v. Texas,* 379 U.S. 476 (1965)).

[57]  *Groh*, 540 U.S. at 557 (citing *Massachusetts v. Sheppard,* 468 U.S. 981, 988 n.5 (1984)).

issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.[58]

## A. Delaware law requires as much specificity as possible in search warrants pertaining to electronic devices.

In *Wheeler v. State*, our Supreme Court considered, for the first time, "a challenge to warrants seeking to seize and search computer-based and digital items on the grounds that they are in the nature of a general warrant, unconstitutionally overbroad, and lack sufficient particularity."[59] Coming after the seminal decision in *Riley v. California*, where the United States Supreme Court held that a warrant is generally required before searching a cell phone "even when a cell phone is seized incident to arrest,"[60] *Wheeler* reiterated that to satisfy the particularity requirement, warrants "must describe what investigating officers believe will be found on electronic devices with as much specificity as possible under the circumstances."[61] The Court in *Wheeler* addressed the balance of interests between protecting a citizen's right to privacy and the police powers of the state.[62] Importantly, for

---

[58]  DEL. CONST., art. I, § 6.

[59]  *Wheeler v. State*, 135 A.3d 282, 302 (Del. 2016).

[60]  *Riley v. California*, 573 U.S. 373, 401 (2014).

[61]  *Wheeler*, 135 A.3d at 304.

[62]  *Id.* at 305 (citations omitted) ("We hesitate to prescribe rigid rules and instead reiterate that warrants must designate the things to be searched and seized as particularly as possible. Striking the correct balance when protecting against generality and overbreadth requires vigilance on the part of judicial officers who are on the front lines of preserving constitutional rights while assisting government officials in the legitimate pursuit of prosecuting criminal activity. Where, as here, the investigators had available to them a more precise description of the alleged criminal activity that is the subject of the warrant, such information should be included in the instrument and the search

13

warrants executed on electronic devices in the post-*Riley* context, our Supreme Court has noted that "[s]atisfying the particularity requirement is difficult in the electronic search warrant context, given the commingling of relevant and irrelevant information and the complexities of segregating responsive files *ex ante*."[63] Our Supreme Court revisited the particularity requirement in *Buckham v. State*, finding that the search warrant there was unconstitutional as it had "expressly authorized search of materials there was no probable cause to search . . . ."[64]

**B. In *Taylor v. State*, the First Search Warrant was found to be a general warrant.**

As our Supreme Court noted in *Wheeler,* because reviewing courts consider both a search warrant's validity and whether it was properly executed only after the search is completed, courts must contend with the commingling of relevant and irrelevant information while separating files *before* the search is even conducted.[65]

In this case, our Supreme Court held that the First Search Warrant was a general warrant because it allowed "investigators to search for 'any and all data'

---

and seizure should be appropriately narrowed to the relevant time period so as to mitigate the potential for unconstitutional exploratory rummaging.")

[63]   *Id.* at 299–300.

[64]   *Buckham v. State*, 185 A.3d 1, 19 (Del. 2018).

[65]   *See* Adam M. Gershowitz, *The Post-Riley Search Warrant: Search Protocols and Particularity in Cell Phone Searches*, 69 Vand. L. Rev. 585 (2016) (suggesting that judicial officers should pre-emptively impose restrictions on cell phone search warrants at the time the warrants are issued.)

'pertinent to the criminal investigation' [and was] unlimited in scope."[66] The Court further noted that when executing the First Search Warrant, "investigators apparently extracted almost all data from Taylor's smartphones from an eleven-year time span, and then searched without restriction for evidence of criminal conduct."[67]

This Court must now address whether the substance and form of the Second Search Warrant has sufficiently overcome the constitutional defects of the First Search Warrant. The Court finds that it does.

### C. The Second Search Warrant is not a general warrant.

Through W*heeler*, *Buckham*, *Taylor*, and most recently, *Thomas v. State*, our Supreme Court has established that a warrant that allows an unbridled "'top-to-bottom search' of '[a]ny and all store[d] data'" on such devices is constitutionally infirm.[68] In *Thomas*, our Supreme Court instructed that "if a court determines that a warrant is general, it must suppress all evidence obtained pursuant to it."[69] But in the instance of an overly broad warrant, the reviewing Court may narrow it down "to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment."[70]

---

[66] *Taylor v. State*, 260 A.3d 602, 616 (Del. 2021).

[67] *Id.*

[68] *Thomas v. State*, __ A.3d __, 2023 WL 6379829, at *10-13 (Del. Oct. 2, 2023).

[69] *Id.* at *13.

[70] *Id.* (quoting *Taylor*, 260 A.3d at 617).

15

This Court now examines the four corners of the Second Search Warrant. The Second Search Warrant not only removed the *any/all* language that afflicted the First Search Warrant—it also imposed an additional temporal restriction on the data searched and seized to include only information from May 1, 2016 to June 1, 2016. The removal of the "any and all language" is not necessarily a cure-all—"the fact that the warrant does not use the language 'any and all' puts form over substance."[71] This Court now finds that these changes, taken together, did impose a meaningful restriction on the data the State searched and seized from Taylor's mobile devices.

The recent decision in *Thomas v. State* guides the Court's particularity review. In *Thomas*, our Supreme Court held that this Court had appropriately redacted evidence from the issued search warrant to eliminate the sections that were lacking probable cause.[72] If needed, the same could be done here.[73]

---

[71] *State v. Freeman*, 2023 WL 2854771, at *6 (Del. Super. Ct. Apr. 9, 2023). Nor has the phrase "'any and all' [ ] somehow become a banned phrase in Delaware search warrants." *State v. Chaffier*, 2023 WL 1872284, at *4 (Del. Super. Ct. Jan. 17, 2023). "As with most questions of word usage, context is key. The phrase 'any and all'—depending on what it is describing—is not only permissible, but sometimes necessary in a warrant." *Id.*

[72] *Thomas*, 2023 WL 6379829, at *14.

[73] After both sides were given the opportunity, post-*Thomas*, to articulate any alternative overbreadth argument and any corresponding remedial excisions, Taylor and the State confirmed no such analysis was appropriate here. *See* Def.'s Post-Hearing Suppl.; State's Resp. to Def.'s Post-Hearing Suppl. In other words, each party was content to stand or fall on their position that the Second Search Warrant was an impermissible general warrant or wholly appropriate as-is. *Id.*

Those positions notwithstanding, during the proceedings on this motion, the Court has expressed its concern that there may be a discrete overbreadth fault with the Second Search Warrant. As explained in this section and the next, there undoubtedly was probable cause adequately expressed for the specific information and materials to be seized from the phone's data that fell within the warrant's defined time span. But the Court finds that there was overbreadth—

16

At the outset, the Second Search Warrant describes the two cellular devices as the specific place to be searched. Just as did the *Thomas* search warrant, the Second Search Warrant here does not authorize officers to search "any and all data" on Taylor's phones. And unlike the First Search Warrant, the Second Search Warrant does not contain the troubling "including but not limited to" language. Rather it contains the term "to include" before setting forth what specific evidentiary items were sought from the devices:

> registry entries, pictures, photographs, images, audio/visual recordings, multi-media messages, web browsing activities, electronic documents, location information, text messaging, writings, usernames, subscriber identifiers, buddy names, screen names, calendar information, call logs, electronic mail, telephone numbers, any similar information/data indicia of communication[].

Next, the Second Search Warrant, as in *Thomas*, has a temporal limitation that authorized officers to search for the identified evidentiary items dated from May 1,

---

*i.e.*, lack of sufficient particularity—in a discrete form of data that might be seized but for which that probable cause did not extend or that was not sufficiently explained and defined. Specifically, the data that would fall in the nebulous category of "electronic documents" would seem to trigger the redaction remedy called for by *Thomas*. *See* 2023 WL 6379829, at *15 (when a search warrant is overbroad "the proper remedy [i]s for the trial court to limit the Search Warrant only to that which was supported by probable cause"). The State has yet to satisfactorily describe what text-containing data would fall into that description— "electronic documents"—but not the others itemized. That so, it cannot be said that this inclusion allowed some "authorized unconstitutional exploratory rummaging" of the entirety of the phones. *Id.* at *14. So, the Court finds limiting the Second Search Warrant to exclude any information or material that was gathered *only* as "electronic documents" outside the scope of "multi-media messages . . . text messaging . . . writings. . .electronic mail . . . [or] any similar information/data indicia of communication" or the other non-communication categories properly set forth in the warrant is appropriate. *Id.* at *12-13. The Court will, therefore, address any specific objection Taylor raises on a specific evidentiary item he contends falls within this exclusion.

17

2016, and June 1, 2016. As the Court in *Thomas* noted, the First Search Warrant in this case (as well as those in *Wheeler* and *Buckham*) had no such temporal limitation.[74] Unlike in *Thomas*, however, Taylor's phones were not known instruments of his alleged crimes—his phones had been found on his person in a search incident to Taylor's arrest. As our high court again reminded, it does "not prescribe rigid rules for the drafting of search warrants."[75]

In *Buckham v. State*, the Court held that the statement "criminals often communicate through cellular phones" was of little value for establishing probable cause to search a seized device.[76] But here, the State had more than just the general observation that communication aiding crimes happens via cell phone—there are social media postings deduced to be coming from Taylor. And the Second Search Warrant's supporting affidavit lays out that Taylor's use of social media and numerous postings referencing the recent crimes, along with his numerous posts referencing the ongoing gang feud, make it reasonable to conclude that he had used his phone(s) to communicate, plan, memorialize, or otherwise facilitate the communication about gang-related crimes among his cohorts. With that, the search warrant satisfies the particularity requirement.

**D. Evidence gathered via the Second Search Warrant is admissible under**

---

[74] *Id.* at \*15 (citations omitted).

[75] *Id.*

[76] *Buckham v. State,* 185 A.3d 1, 17 (Del. 2018).

**the Independent Source Doctrine.**

Taylor contends the Second Search Warrant serves "to wield the independent source doctrine to eviscerate the heightened privacy protections that blossomed in *Riley* and ultimately bloomed in *Wheeler*, *Buckham*, and *Taylor*."[77] Our Supreme Court has held that "taint may be purged and the evidence may be admissible through one of the doctrinal exceptions to the exclusionary rule [including] the independent source doctrine . . . ."[78] As our Supreme Court has explained:

> [t]wo closely-related exceptions to the exclusionary rule flow from the premise that, although the government ought not profit from its own misconduct, it also should not be made worse off than it would have been had the misconduct not occurred . . . [] where the challenged evidence has an independent source, exclusion would put the police in a worse position than they would have been absent any error or violation.[79]

The State insists that the Second Search Warrant is proper and the evidence seized under its authority admissible relying on *Murray v. United States*, where the United States Supreme Court—echoing its ruling in *Nix v. Williams*—observed that:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse* position, that they would have been in if no police error or misconduct had occurred . . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or

---

[77] Def.'s Mot. to Suppress ¶ 23.

[78] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1292 (Del. 2008) (citations omitted).

[79] *Norman v. State*, 976 A.2d 843, 859 (Del. 2009) (citations omitted).

violation.[80]

As the Third Circuit has since explained, when applying the Independent Source Doctrine, "the issue is whether the police would have applied for a warrant without the material tainted by a warrantless search."[81] Here, Taylor suggests that a Second Search Warrant remains tainted by the First Search Warrant and that this independently supports the suppression of the entirety of the contents of the phone. Not so.

No doubt, the police applied for a search warrant in the first instant—it was simply the form of that warrant that was deficient. The State has since obtained a valid warrant that depends in no way on information gathered in what one would analogize as a first "warrantless" search. Under the Independent Search Doctrine, "officers who unlawfully enter an area protected by the Fourth Amendment and learn of facts $x$ and $y$ but then later learn of facts $x$ and $y$ independently and lawfully, can have admitted into evidence their knowledge concerning facts $x$ and $y$."[82]

Taylor posits that the Colorado Supreme Court's decision in *People v. Thompson* would prohibit application of the independent source doctrine here.[83] In

---

[80] *Murray v. United States*, 487 U.S. 533, 537 (1988) (quoting *Nix v. Williams,* 467 U.S. 431, 443 (1984)).

[81] *United States v. Price*, 558 F.3d 270, 282 (3d Cir. 2009).

[82] *United States v. Herrold*, 962 F.2d 1131, 1140 (3d Cir. 1992).

[83] Def.'s Mot. to Suppress ¶¶ 25-26 (citing *People v. Thompson,* 500 P.3d 1075 (Colo. 2021)).

*Thompson* the Colorado high court rightly held admissibility of evidence under a deficient warrant would not derive "simply by procuring a new warrant and 'obtaining' the evidence a second time (notwithstanding the fact that they had the evidence in their possession the entire time), without showing that the later seizure was genuinely independent of the earlier, tainted one."[84] In affirming the trial court's suppression order, the *Thompson* court did not hold that the independent source doctrine might not apply in such a circumstance.[85] Rather, it found the "minimal argument of [prosecution] counsel did not satisfy the People's burden of establishing the applicability of the independent source doctrine."[86]

Generally, the Independent Source Doctrine requires a determination of whether, "if, without regard to information obtained during the original entry, the police would have applied for the search warrant," as well as whether "there was probable cause for the warrant to be issued."[87]

So first, has the State demonstrated that had the police not been privy to the contents of Taylor's cell phones—through execution of First Search Warrant—they would have otherwise applied for a search warrant in the first instance? Of course, in circumstances like this, that answer is known. They did, in fact, apply for a

---

84  *Thompson,* 500 P.3d at 1080.

85  *Id*. at 1080-81.

86  *Id*. at 1080.

87  *United States v. Price*, 558 F.3d 270, 280 (3d Cir. 2009) (quoting *Herrold*, 962 F.2d at 1140).

warrant authorizing search of phones seized from Taylor's person when he was arrested for these crimes.

Next, was the probable cause articulated and extant for the Second Search Warrant independent of the initial, unlawful one?[88]  It was. An arrest warrant had been issued for Taylor first-degree assault that stemmed for an alleged gang-related shooting that had occurred on May 16, 2016.  The police, incident to arrest for that crime, gathered the two cell phones on Taylor's person.  Prior to searching those phones, police had discovered public social media evidence of the ongoing gang feud and that Taylor was actively posting photos and messages about that feud.  In the affidavit to the Second Search Warrant, officers noted that "gangs are using social media to communicate within their own gang and with rival gang members.  Threats and challenges are communicated in quick succession with resulting retaliatory criminal offenses happening soon thereafter."[89]

> The affidavit further described Taylor's social media posts in detail:[]
>
> Taylor's personal social media accounts have displayed "numerous photographs of [] Taylor holding or displaying firearms, photographs of [] Taylor and other gang members displaying gang signs, and [] Taylor and other gang members posting messages boasting about the STK gang, and also challenging rival gangs.  Some of the social media posts use hashtags like "#FTO" ([sic] the Opps [opposition]) and

---

[88]  *See Thompson,* 500 P.3d at 1080.

[89]  Def.'s Mot. to Suppress, Ex. A ¶ 23.

"Dropping J's" (a derogatory reference to Jordan Ellerbe being murdered). The volume of these postings and their presence on [] Taylor's personal social media accounts is evidence that he frequently accessed and uploaded the content himself.[90]

The affidavit summarized that, "[b]y all accounts, it appears [] Taylor uses his cell phone(s) as a tool to perpetuate the ongoing violent gang warfare that is playing out over social media. Your affiant knows that the most convenient and popular mode of accessing and utilizing social media is a personal cell phone…[and] therefore believes that evidence of the ongoing gang feud and the recent shootings where [] Taylor is a suspect would be located on his cellular phones."[91] And "as highlighted in the attached exhibits, these individuals also use cellular phones to search the internet to view, download, and post to social media, news articles about crimes they have committed. . . ."[92] These public social media posts were available independent of the First Search Warrant.

The Court recently addressed a circumstance similar to this in *State v. Carter*.[93] In *Carter*, the defendant moved to suppress alleging that the first-issued search warrant in his case was a general warrant because "it lacked specificity, the time period for which the materials were requested was too expansive, and [] it failed

---

[90]  *Id*. Ex. A ¶ 14.

[91]  *Id*.

[92]  *Id*. Ex. A ¶ 23.

[93]  *State v. Carter*, 2022 WL 1561537 (Del. Super. Ct. May 17, 2022).

to establish probable cause that any evidence of the alleged criminal activity would be found on the smartphone."[94]  The officers subsequently obtained a second search warrant in response, and this Court held that under the Independent Source Doctrine, the second search warrant was proper and did not rely on the first search warrant.[95] As the Court explained in *Carter*:

> None of the evidence obtained by way of Warrant 1 was used by the police in their application for Warrant 2.  While this Court is cognizant of [the defendant's] frustrations that the State, in essence, gets to fix its errors, suppression of *all* evidence retrieved from [the defendant's] iPhone(s) does nothing to further the purposes of the exclusionary rule.[96]

The same conclusion is reached.  The Independent Source Doctrine allows for admission of the evidence obtained from Taylor's two smartphones under the Second Search Warrant.

---

[94]  *Id*. at *1.

[95]  *Id.* at *6.

[96]  *Id*.

**E. The Law of the Case Doctrine does not bar the Second Search Warrant.**

Taylor maintains the Second Search Warrant and admission of any evidence obtained by its execution is barred by the Law of the Case Doctrine and the Mandate Rule. He construes the Supreme Court's earlier ruling in his case to mean that "the Court unequivocally held that total suppression was the only remedy."[97] Not so.

When reversing and remanding for a new trial, the Supreme Court included no blanket prohibition on a second search warrant. Consistent with the Supreme Court's remand instruction, a new trial has been afforded. Taylor's contention that he "is to be retried barring all taint from the fruits of the first general search warrant"[98] is being honored. As found above, there is no taint attached to the evidence the State now seeks to admit—it was all obtained via execution of the valid and constitutionally permissible Second Search Warrant. The State is correct here, "[i]f [it] were to ask th[is] [ ] Court to admit the same content from the same cell phone search warrant that [the] Supreme Court found unlawful, then the law of the case doctrine would prevent its use."[99] But, put simply, the law of this case was that the First Search Warrant was unconstitutionally deficient and therefore evidence obtained thereunder had to be excluded. There was no ruling that the same evidence

---

[97] Def.'s Mot. to Suppress ¶ 17.

[98] *Id.* ¶ 19.

[99] State's Resp. to Def.'s Mot. to Suppress ¶ 21.

was forever forbidden from use no matter the circumstance of its discovery. And there is nothing to be gained from exclusion of the evidence (whether it be the same or not) that has now been collected (or re-collected) in a constitutionally appropriate manner—*i.e.,* under the authority granted by the Second Search Warrant. Neither the Law of the Case Doctrine nor the Mandate Rule require suppression in this instance.

### F. The Attorney General's subpoena was valid.

Taylor next argues that the subpoena served on the DDOC was unreasonable and, therefore, the materials produced must be excluded from use at his retrial.[100] As noted, 29 *Del. C.* § 2504 sets forth the powers, duties and authority of the Department of Justice including the power to "investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith."[101]

Delaware has adopted the United States Supreme Court's test first articulated in *Procunier v. Martinez* to assess the reasonableness of a subpoena for prison communications.[102]

> The *Martinez* standard requires Delaware courts to determine whether "(1) the contested actions furthered an important or

---

[100]  Def.'s Mot. to Suppress ¶¶ 36-46.

[101]  29 *Del. C.* § 2504(4).

[102]  *Whitehurst v. State*, 83 A.3d 362, 367 (Del. 2013) (citing *Procunier v. Martinez,* 416 U.S. 396, 423 (1974), *rev'd on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989).

substantial government interest . . . , and (2) the contested actions were no greater than necessary for the protection of that interest."[103]

Furthermore,

> probable cause is not required for the State to record prisoners' phone calls or to subpoena the recordings. This is because "prisoners who are notified by prison officials that their communications will be monitored have no expectation of privacy in the mail they send or the telephone calls they make" under the Fourth Amendment.[104]

For such a subpoena to be found reasonable it must "specify the materials to be produced with reasonable particularity" and "require the production only of materials relevant to the investigation."[105] Finally, "the materials must not cover an unreasonable amount of time."[106]

The State maintains that its subpoena for prison communications was appropriate because it stated with particularity the materials it was requesting, that those materials were relevant to its ongoing investigation, and that the timeframe for which prison communication materials was reasonable in this circumstance.[107] The Court agrees.

---

[103] *Id*. (quoting *Martinez,* 416 U.S. at 423).

[104] *Id*. (quoting *Johnson v. State*, 2012 WL 3893524, at *1 (Del. Sept. 7, 2012)).

[105] *Johnson v. State*, 983 A.2d 904, 921 (Del. 2009).

[106] *Id.*

[107] State's Resp. to Def.'s Mot. to Suppress ¶¶ 34, 36-37.

27

In *Shannon Johnson v. State,* the Supreme Court found sufficient particularity where the subpoena sought "…copies for all incoming and outgoing mail for inmate [] Johnson. . . from 11-15-2006."[108] Here, the subpoena does more.

First, it states with particularity the materials to be produced, namely, phone number lists, outgoing call log entries and conversations, video calls, tablet text messages, in-person meeting recordings, and non-legal incoming and out-going material as it related to all records regarding telephone and/or visiting room conversations for Taylor.[109]

Second, the State provides several reasons why the materials requested are relevant to its case and ongoing investigative needs. In January 2020, Taylor was ordered to have No Contact with OMB or STK gang members, his co-defendants, and the victims or their residences.[110] The State argues that "Taylor was convicted of chasing down and menacing at gunpoint two OMB-adjacent witnesses, victims [] and [], and shooting another victim [], who did not appear for trial. Taylor's co-defendant [] was pending trial following Taylor's guilty verdict, and Taylor's co-defendant [] faced a series of threats following his testimony that led to his

---

[108] *Johnson*, at 921.

[109] State's Resp. to Def.'s Mot. to Suppress ¶ 30.

[110] State's Resp. to Def.'s Mot. to Suppress ¶32.

relocation. . . for his safety.[111]   Additionally, the State presented information that Taylor was convicted of Assault in a Detention Facility during the pendency of his case, and that he has been using other inmate PINs for phone calls.[112]   This behavior is consistent with inmate efforts to engage in ongoing criminal behavior while detained.   Accordingly, the State has articulated a credible risk of witness intimidation and threats.   And investigation of potential witness tampering constitutes a substantial government interest.[113]

Third, the materials sought covered the period between April 21, 2018, to the present.   As we approach Taylor's retrial, the credible risk of witness intimidation articulated by the State justified its request of DDOC.   Taking these factors into consideration, there is nothing to indicate that the State's subpoena was greater in scope than necessary to further its legitimate investigative efforts[114] and duties to prevent Taylor from engaging in criminal activity, as well as to protect the witnesses from tampering, threats, or intimidation.

---

[111] *Id.* at ¶ 34.

[112] State's Resp. to Def.'s Mot. to Suppress ¶34.

[113] *Waters v. State*, 242 A.3d 778, 784 (Del. 2020) (quoting *Whitehurst*, 83 A.3d at 367).

[114] *Whitehurst*, 83 A.3d at 368.

## VI.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress is **DENIED**.[115]

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

cc:     Prothonotary

---

[115] Albeit, without prejudice for Taylor to seek exclusion of any individual evidentiary item he contends was seized from his phones outside the limitation on the Second Search Warrant the Court described in n.75, *supra*.